SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**WILLIAM M. NARUS, CAB #243633**
William.Narus@usdoj.gov
First Assistant U.S. Attorney
**NICOLE M. HERMANN, OSB #126353**
Nicole.Hermann@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:19-cr-00482-IM** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **FERNANDO ADOLIP CRUZ-LERMA,** | |
| **Defendant.** | |

Defendant is scheduled to appear for sentencing following his guilty plea to a conspiracy to possess with intent to distribute and to distribute controlled substances. The parties jointly recommend a sentence of 14 years of custody, five years of supervised release, and restitution. This sentence appropriately accounts for the role defendant played in the drug trafficking conspiracy and murder of the victim.

## I.    BACKGROUND

### A.    The Offense Conduct

The pre-sentence report (PSR) accurately describes the offense conduct as supplemented below. PSR ¶¶ 19-30.

**Government's Sentencing Memorandum**                                                   **Page 1**

In 2018, the Portland Police Bureau (PPB) initiated an investigation into a Mexico-based drug trafficking organization (DTO) that was distributing large quantities of methamphetamine, heroin, cocaine, and counterfeit OxyContin in the Portland area. The DTO was an intermediate source of supply to other organizations in the Portland area, on the Oregon coast, and in the Olympia, Washington area. The leader of the DTO ("co-conspirator-1") left the area in late January 2019 and passed control of his operation to Marcos Alonso Castillo-Bernal, who was later convicted and sentenced in 2023 by this Court to 26 years of imprisonment. *See United States v. Castillo-Bernal*, 19-CR-489-IM, ECF No. 98. Through physical surveillance, law enforcement database and open-source checks, source reporting, and utility subscriber details, investigators confirmed that Castillo-Bernal moved into co-conspirator-1's Woodburn apartment and began to use co-conspirator-1's Acura MDX. PPB identified a ranch located in Molalla, Oregon (Molalla Ranch) as a main stash location for the DTO's drugs. On April 12, 2019, PPB erected a pole camera angled at the street entrance to the ranch to investigate the drug trafficking organization.

In April 2019, the investigation expanded when Castillo-Bernal and defendant were identified as suspects in the April 13, 2019, murder of Ricardo Corral Moreno. A multi-agency team, including the DEA, Federal Bureau of Investigation (FBI), Clackamas County Sheriff's Office, PPB, and other agencies proceeded to investigate the drug distribution conspiracy and the murder. The victim had distributed drugs in the Olympia, Washington area and sourced those drugs from defendant, among others. Through his dealings, he accumulated a significant drug debt of approximately $90,000. PSR ¶ 24.

Moreno was kidnapped and killed because he couldn't pay back his drug debt. His murder followed months of escalating demands, extortion, threats, and attempts to get him to pay

**Government's Sentencing Memorandum**                                    **Page 2**

up. His family and friends received numerous calls, demanding payment for his debt. PSR ¶ 24. Defendant worked to enforce payback through vehicles that Moreno would offer him. Just eight days before the kidnapping, defendant went to Aberdeen, Washington to get a vehicle from Moreno as partial payment of the drug debt. PSR ¶ 24.

When that wasn't enough, defendant went to Aberdeen on April 9, 2019, to get more payment. PSR ¶ 25. Defendant gave an associate of Moreno's heroin to sell to generate funds to pay the debt while Moreno remained under defendant's watch at an apartment. PSR ¶ 25. But the associate left and didn't come back. *Id.* Text messages from Moreno to the associate's phone show an unanswered string of messages indicating the imminent danger to Moreno: "bro hey where u was going on they are taking me whit them I dead and my family to if I don't pay." *Id*.

Unable to get money from him in Aberdeen, defendant drove Moreno back down to a Woodburn apartment. PSR ¶ 26. On April 10, 2019, more demand calls went out to Moreno's family. *Id.* At some point, Moreno was taken to the Molalla Ranch, where, on April 13, 2019, he was restrained against his will, brutally beaten to death, and loaded into a horse trailer. PSR ¶ 27.

Pole camera footage at the Molalla Ranch showed increased vehicle traffic on April 13, 2019—the day before Moreno's body was found in the road. PSR ¶ 23. At 11:06 p.m., the pole camera captured a truck pulling a horse trailer out of the ranch. *Id*. Security footage from a home on South Liberal Way Road captured the truck and trailer passing by at 12:35 a.m., about 15 minutes before Moreno's body was found. *Id*. Moreno's blood was found on a rubber floor mat in the horse trailer. *Id*.

At approximately 12:49 a.m., on April 14, 2019, Moreno's body was found by a passer-by in the middle of South Liberal Way Road, a rural road about 11 miles from the Molalla

///

**Government's Sentencing Memorandum**                                    **Page 3**

Ranch. PSR ¶ 20. He was laying in the middle of the westbound lane of traffic, with his legs spread apart and his arms raised away from his body. *Id*.

Moreno had ligature marks on his wrists consistent with having been bound or tied up with restraints. PSR ¶ 21. An autopsy confirmed that he died of blunt force injuries to the back of his head consistent with trauma from a blunt force instrument. PSR ¶ 22. He also had other injuries, including facial abrasions and contusions on his left cheek and elsewhere, and lacerations and contusions to his arms, hands, legs, and feet. *Id*. Castillo-Bernal's DNA was found on Moreno's left cheek and left ankle. *Id*. Defendant's DNA was not found on Moreno's body and did not match any other DNA collected during the investigation.

In May 2019, law enforcement officials conducted a series of controlled purchases from Castillo-Bernal and defendant using a confidential source. As relevant here, on May 31, 2019, Castillo-Bernal arranged a deal to sell two pounds of methamphetamine to the confidential source. A short time later, investigators conducting surveillance saw defendant enter the meeting location in a vehicle registered to co-conspirator-1 and distribute the methamphetamine. The DEA determined the amount delivered was 870.7 grams of actual methamphetamine. PSR ¶ 29.

Following the controlled purchase, investigators believe that, in approximately June 2019, defendant left the United States for Mexico.

In October 2019, following the arrest of Castillo-Bernal, a federal grand jury returned a sealed one-count indictment, charging defendant with the drug trafficking conspiracy. ECF 1.

In May 2023, a few days after this Court sentenced Castillo-Bernal, defendant flew into Calgary, Canada and was arrested on the arrest warrant issued in Oregon. PSR ¶ 30. Following extradition proceedings, defendant was transferred to the custody of the U.S. Marshals Service

///

**Government's Sentencing Memorandum**                                                    **Page 4**

on approximately July 10, 2024, and returned to Oregon. *Id.* Defendant has remained in custody for approximately 38 months since his arrest in Calgary on May 6, 2023.

### B.    The Charges

As noted, in October 2019, defendant was charged with a single count of drug trafficking. ECF No. 1.

In June 2023, the Grand Jury returned a Superseding Indictment, charging defendant with a drug trafficking conspiracy and a substantive count of distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Superseding Indictment alleged that it was part of the conspiracy for members to kidnap and take hostage a person who owed money to members of the conspiracy, for members to threaten friends and family members of the person who had been kidnapped, and to kill the person who owed money to members of the conspiracy. ECF No. 9.

### C.    The Plea Agreement

The parties negotiated a plea agreement, that was entered on April 7, 2026, in which both sides agreed to recommend 168 months of imprisonment and five years of supervised release. The agreement was entered pursuant to Rule 11(c)(1)(C) and is binding on the Court if the Court accepts the agreement. The parties jointly agreed to the following guideline calculations:

| | |
|---|---|
| Base offense level [USSG § 2D1.1 & 2A1.2(a)] | 38 |
| Restraint of the Victim [USSG § 3A1.3] | +2 |
| Acceptance [USSG § 3E1.1] | -3 |
| 18 U.S.C. § 3553(a) Variance | -2 |
| **Total Adjusted Offense Level** | **35** |

The quantity of actual methamphetamine results in a base offense level of 34, but the parties have agreed that the cross-reference in USSG §§ 2D1.1 and 2A1.2(a) determines the base offense level of 38 because Moreno was killed under circumstances that would constitute second

**Government's Sentencing Memorandum**                                                    **Page 5**

degree murder during the course of the drug trafficking conspiracy. In the factual basis paragraph of the plea agreement, defendant admitted that Moreno's death was both reasonably foreseeable and in furtherance of the conspiracy. ECF No. 57 at 3; *see also United States v. Gamez*, 301 F.3d 1138, 1147 (9th Cir. 2002) ("We conclude that the district court's application of USSG § 2D1.1(d)(1)'s murder cross-reference to enhance [defendant's] sentence by 105 months was proper in light of the fact that [the victim's] murder was both 'reasonably foreseeable' and 'in furtherance' of the drug trafficking conspiracy in which [defendant] participated.").

Pursuant to 18 U.S.C. § 1111, murder is the unlawful killing of a human being with malice aforethought. The Ninth Circuit has explained, "To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life." *See United States v. Houser*, 130 F.3d 867, 871 (9th Cir. 1997). Murder in the first degree requires premeditation. *See United States v. Free*, 841 F.2d 321, 325 (9th Cir. 1988). Here, the parties agreed to resolve this case through a plea agreement with the cross-reference to second degree murder, which is to say that Moreno was murdered with malice aforethought, but without premeditation. ECF No. 57.  The PSR agreed with the guideline calculations set forth by the parties in the plea agreement.  PSR ¶ 36.

The United States agreed to recommend an additional two-level decrease in the offense level to achieve a reasonable sentence, with defendant's timely acceptance of the offer. The recommended variance is important for three reasons. First, it ensured that defendant would accept responsibility for his participation in the murder, which was an important goal for victim redress. Second, it avoided the risk of substantial pre-trial litigation and trial uncertainties. Third, the witness testimony to be presented would have required the government to reveal the

///

**Government's Sentencing Memorandum**                                              **Page 6**

identities of witnesses who had assisted the government during this investigation, which places the witnesses in danger and forecloses future assistance from those witnesses.

## II.    ARGUMENT

Defendant conspired with others to distribute methamphetamine in the Portland area, the Oregon coast, and the Olympia, Washington area. Unlike the vast majority of drug traffickers sentenced by this Court, the conspiracy here was particularly violent, killing the victim after he and his family could not pay off his drug debt. From April 9, 2019, to April 13, 2019, defendant knew that Moreno was being held and detained against his will and assisted by transporting Moreno from the state of Washington to Oregon due to a drug debt that Moreno owed to the DTO.  Defendant knew that Moreno's family was being extorted during his detainment and he assisted with disposing of Moreno's body after he had been killed. The defendant has admitted that the government can prove those facts beyond a reasonable doubt. He has also admitted that Moreno's death was both reasonably foreseeable and in furtherance of the drug trafficking conspiracy. ECF No. 57 at 3.

Moreno's death was gruesome, bloody, and violent. Moreno was a son, a brother, and a friend to many. No one deserves to die like that. Defendant must be held accountable for his role in the conspiracy that brought about Moreno's death. A sentence of 168 months of imprisonment is appropriate considering the § 3553(a) factors, including the advisory guideline range, as well as defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. § 3553(a)(1)-(2).

///

**Government's Sentencing Memorandum**                                    **Page 7**

Several factors distinguish the recommended sentence of 14 years from the sentence of 26 years imposed on Castillo-Bernal. First, Castillo-Bernal had two prior federal convictions, including a federal drug trafficking conviction from 2005, demonstrating that he had been involved in drug trafficking at various points in his life more than 15 years apart. By contrast, defendant was 18 years old at the time of the offense and has no known criminal history. Both defendant and Castillo-Bernal will be removed to Mexico following the completion of their sentences.  Second, Castillo-Bernal had a leadership role in the drug trafficking conspiracy. Castillo-Bernal arranged the drug deal and sent defendant to deliver the methamphetamine in May 2019. The parties have agreed that defendant's conduct does not warrant any role adjustment. Third, Castillo-Bernal's DNA was located on Moreno's left cheek, immediately below a large abrasion on Moreno's face, indicating that Castillo-Bernal assaulted Moreno. Investigators obtained defendant's DNA and compared it to the known evidentiary samples, but it was not a match. Finally, the evidence established that Castillo-Bernal possessed a firearm during the conspiracy whereas there is insufficient evidence to establish that defendant possessed a firearm.

The nature and seriousness of defendant's crime, and the tragic outcome, warrant no less than a sentence of 14 years. Defendant participated in the conspiracy that resulted in Moreno's death both before the murder – by traveling to Washington to bring Moreno down to Oregon – and after the murder – by assisting with the disposal of Moreno's body.  Drug traffickers need to know that violence committed while dealing drugs will not be tolerated and will result in lengthy prison sentences. Finally, adequate justice demands true punishment to give some measure of reprieve to Moreno's family for the loss of their beloved son and brother.

///

**Government's Sentencing Memorandum**                                              **Page 8**

## III.    RESTITUTION

The United States requests that the Court award restitution to the victims in the amount of $3,448.64. This is the amount of loss attributable to defendant's conduct and should be joint and several with Castillo-Bernal. The United States will separately provide the Court with the contact information for the victims.

## IV.    CONCLUSION

The United States recommends that this Court impose a sentence of 168 months of imprisonment, a five-year term of supervised release, a $100 fee assessment, and restitution in the amount of $3,448.64.

Dated: July 2, 2026                              Respectfully submitted,

                                                 SCOTT E. BRADFORD
                                                 United States Attorney

                                                 */s/ William M. Narus*
                                                 WILLIAM M. NARUS, CAB #243633
                                                 First Assistant United States Attorney

                                                 */s/ Nicole Hermann*
                                                 NICOLE M. HERMANN, OSB #126353
                                                 Assistant United States Attorney

**Government's Sentencing Memorandum**                              **Page 9**